# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LIAS CARTER, Jr.<br>11337 Melclare Drive.<br>Beltsville, MD 20707 | * |
| Plaintiff | Civil Action No._____ |
| v. | * |
| MONTGOMERY COUNTY<br>MARYLAND<br>101 Monroe Street, 2nd Floor<br>Rockville, Maryland 20850 | |
| Serve On:<br>Isiah Leggett<br>County Executive<br>And<br>County Attorney<br>101 Monroe Street<br>Rockville, MD 20850 | * |
| Defendant | * |

*****

## COMPLAINT

### (Disability Discrimination in Employment)

COMES NOW, Plaintiff, Lias Carter, Jr., by and through the undersigned counsel, William Payne, Esquire and sues the defendant as follows:

## NATURE OF ACTION

1.  This is an action under the Americans with Disabilities Act (ADA) to correct unlawful employment practices based on disability and to provide appropriate relief to Lias Carter, Jr. who was adversely affected by such practices. Plaintiff, a former employee of Defendant, Montgomery County Department of Transportation ("Montgomery DOT"), alleges that Montgomery DOT failed to reasonably accommodate

plaintiff's physical disability and wrongfully terminated plaintiff's employment as a Ride On bus driver based on plaintiff's disability.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to Section 107(a) of Title 1 of the Americans with Disabilities Act of 1990, as amended (hereafter "ADA"), 42 U.S.C. § 12117 which incorporates by reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200-00e-5.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) in that plaintiff's claims and the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

Plaintiff, Lias Carter, is an adult citizen of the United States of America and a resident of the State of Maryland. At all times relevant herein, he was an employee and/or ex-employee of the Montgomery County, Maryland Department of Transportation. Plaintiff was employed by defendant as a bus operator in the defendant's bus system called the "Ride-On."'

4. At all times relevant herein, Defendant, Montgomery County, Maryland is a political subdivision of the State of Maryland. Said defendant employs over 15 people in the State of Maryland's Montgomery County Department of Transportation (DOT).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has exhausted his administrative remedies. He filed timely administrative charges of discrimination against the Montgomery County Department of

Transportation on or about March 14, 2018 with the U.S. Equal Employment Opportunity Commission ("EEOC") for investigation.

6. On April 25, 2018, the EEOC issued a right to sue letter to Plaintiff. Said letter is attached hereto and marked Exhibit 1.

## STATEMENT OF CLAIMS

7. In April of 2001 Plaintiff was hired by defendant as a bus operator. Prior to the end of the 90 day probationary period Plaintiff was terminated by Defendant because he was allegedly late on three occasions. Ultimately, the Defendant rehired Plaintiff on November 04, 2004 because it was discovered that Defendant had mistakenly charged Plaintiff for three late occasions when he had only been late on one occasion.

8. In late April 2016 Plaintiff, within the scope of his employment, was operating the bus when he attempted to open the front door latch on the bus. Suddenly he felt tremendous pain in his left hand that prevented him from operating the bus. Plaintiff sought medical treatment and filed a worker's compensation claim because he was unable to perform his duties as bus operator. Plaintiff's worker's compensation claim based on trigger finger was initially denied but later accepted. Plaintiff's work related injury was diagnosed as trigger finger on his left hand. The said diagnosis was expanded to include carpel tunnel syndrome of the left hand. Plaintiff modified his worker's compensation claim to include the carpel tunnel syndrome of the right hand. That claim has been denied. Surgery was performed on August 03, 2016 relative to the trigger finger of the left hand.

9. Six days later, on August 09, 2016 Plaintiff began experiencing pain in his right hand. Plaintiff was diagnosed as suffering from trigger finger of the right hand. Plaintiff

3

filed a worker's compensation claim because of the pain he was experiencing in his right hand. That claim was accepted. With respect to Plaintiff's right hand injury of trigger finger, the diagnosis of Plaintiff's right hand injury was also expanded to include carpel tunnel syndrome of the right hand. Ultimately, Plaintiff's work related injury was diagnosed as trigger finger of both hands and carpel tunnel syndrome of both hands. Defendant has accepted worker's compensation claims of trigger finer of both hands and denied the worker's compensation claims of carpel tunnel syndrome of both hands.

10. Due to Plaintiff's work related injuries he could not work as a bus driver. Due to lack of income he applied for and was accepted into the sick leave bank, a program which allows employees to use paid sick leave donated by co-workers to assist employees injured on the job. Plaintiff received paid sick leave from the sick leave bank from August 09, 2016 through July 08, 2017. Once the paid sick leave through the sick leave bank expired, Plaintiff still could not work as a bus driver due to his work related injuries. He had no money coming in to pay his bills. Plaintiff remained temporarily totally disabled due to the job related injuries. Consequently, Plaintiff filed for paid disability leave with the Defendant.

11. Even though Plaintiff's doctor has designated his medical and physical condition as temporarily totally disabled due to his work related injuries, on August 10, 2017, Dan Hibbert, Chief of the DOT denied Plaintiff's request for paid disability leave and instead gave Plaintiff the employment classification of leave without pay. As a result of Defendant's decision denying disability leave, Plaintiff became penniless and could not pay his bills. Plaintiff had no money to pay the rent for his home and was evicted from his apartment. Plaintiff could not afford to repair his automobile and lost possession of

4

the car. Plaintiff's inability to pay his bills due to his disability made his credit rating unworthy. Plaintiff literally became homeless.

## COUNT ONE

### Unlawful employment discrimination based on disability

12. Plaintiff adopts and incorporates by reference, the allegations contained in Paragraphs 1 through 11 of this Complaint as if fully re-alleged herein.

13. Plaintiff was denied disability leave by the Defendant even though Article 17 of the collective bargaining agreement between Defendant and the union that Plaintiff belongs to states: "An employee who is temporarily disabled in the line of duty and unable to perform normal duties or an alternate duty assignment must be paid full salary continuation in the form of disability leave for a maximum period of 18 months of the temporary disability provided that the employee participate in the cost-savings programs administered by the Montgomery County of Risk Management."

14. That Plaintiff participated in the cost-savings program. After Defendant denied Plaintiff's request for disability leave, as stated earlier, he was placed on leave without pay from August 10, 2017 through December 11, 2017.

15. To qualify for and perform the job of bus operator, an employee must, inter alia, be physically able to walk, stand, and lift weight. Plaintiff's employment with the Defendant evolved to tenured merit system status as a bus operator. Contemporaneously

5

with his tenured merit system status Plaintiff became a member of MCGEO the local union representing Montgomery County bus operators.

16. Plaintiff's duties as a bus operator required him, inter alia, to use both his hands to operate County Ride On transit buses on the public streets of Montgomery County, Maryland following bus routes that are run out of several Ride On bus depots owned and operated by the Defendant. Additional duties included driving the said buses and picking up and discharging passengers at designated bus stops, assisting disabled passengers to board and discharge from the bus, lifting and carrying packages for disabled passengers and others in need.

17. In late April 2016 while on duty and driving a Ride On bus plaintiff sustained serious on- the- job injuries ("Injuries"), when he sustained an injury to his left hand. The said injury was medically diagnosed as trigger finger and carpel tunnel syndrome. On August 09, 2017 Plaintiff suffered the same injury to his right hand. Plaintiff has received, continues to receive and will require in the future, substantial medical treatment and other related services. Moreover, plaintiff has and continues to suffer significant pain both physical and emotional as a result of said injuries.

18. Since the date of plaintiff's work related injuries, he never returned to full duty status as a bus operator or in any other employment category for defendant.

19. Starting in August 2017, Plaintiff requested light duty assignments. Despite numerous requests for light duty assignments, Defendant has refused to provide Plaintiff with a reasonable accommodation and place him on light duty. plaintiff's injurious condition improved sufficiently to allow plaintiff to work in a light duty capacity for defendant.

20. However, on December 11, 2017, citing Plaintiff's inability to perform his job, as a bus operator, Defendant terminated plaintiff's employment.

21. That plaintiff requested a reasonable accommodation from defendant so that he could eventually return to his job as bus operator or in the alternative, receive employment with the defendant in a different job. Moreover, Plaintiff requested paid disability leave pursuant to the collective bargaining agreement Defendant had with Plaintiff's union so that Plaintiff could maintain his employment with Defendant while he continued to receive medical treatment for his work related injuries. Defendant denied that request despite Plaintiff's eligibility.

22. While defendant will claim that it reasonably accommodated plaintiff, said accommodation was a sham because defendant did not reasonably accommodate plaintiff. Title I of the ADA requires an employer to provide reasonable accommodation to qualified individuals with disabilities who are employees or applicants for employment, unless to do so would cause undue hardship. Plaintiff requested accommodation that would not cause undue hardship. Alternatively, Plaintiff requested paid disability leave. Defendant denied that request despite Plaintiff being eligible for leave.

23. On December 11, 2018 Defendant terminated plaintiff's employment without ever providing him a reasonable accommodation or granting him paid disability leave. Said termination has severely injured Plaintiff causing great loss of income, loss of health insurance, and forced Plaintiff to withdraw from his 401A plan $50,000 ($12,000 of

7

which he had to pay in taxes) in order to pay for a place to live and to get another car for transportation, inter alia.

19. The unlawful employment practices complained of by Plaintiff were intentional and were done with malicious and with reckless indifference to the federally protected rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

   A. Order Defendant to pay Plaintiff back pay and front pay;

   B. Reinstate Plaintiff's employment status with the Defendant;

   C. Compensatory Damages;

   D. Punitive Damages;

   E. Award Plaintiff attorney's fees and costs in prosecuting this action;

   F. Such further relief justice and the nature of this cause requires.

RESPECTFULLY SUBMITTED
PAYNE & ASSOCIATES

By: *[signature]*
William Payne, Esq.
Bar No. 06428
419 7th Street, N.W.
Suite 405
Washington, DC 20004
(202) 370-0201
payneesquire@aol.com
Attorney for Plaintiff

JURY DEMAND

Plaintiff demands a trial by jury of all issues herein so triable.

*[signature]*
William Payne, Esquire