# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| LIAS CARTER, JR.,<br><br>Plaintiff,<br><br>v.<br><br>MONTGOMERY COUNTY, MARYLAND,<br><br>Defendant. | Civil Action No. TDC-18-2249 |

## MEMORANDUM OPINION

Plaintiff Lias Carter has filed a civil action against the Department of Transportation of Montgomery County, Maryland ("the County"), alleging disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2012). Presently pending before the Court is the County's Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

In April 2001, Carter was hired as a bus operator for Montgomery County's "Ride-On" bus system. In late April 2016, while working in that role, Carter injured his left hand while attempting to open the door latch of the bus. He was diagnosed with trigger finger and, later, carpal tunnel syndrome of his left hand. Soon after Carter underwent surgery on August 3, 2016 for the trigger finger condition, Carter began to experience pain in his right hand and was then diagnosed with trigger finger and carpal tunnel syndrome in his right hand as well. Because of these conditions, Carter was unable to work as a bus operator and took paid sick leave from August

9, 2016 through July 8, 2017, using sick leave donated by his colleagues through a County program.

Carter requested light duty assignments beginning in August 2016, including assignments as a bus driver observer and an office assistant, and made the same request again in January 2017. In January 2017, after Carter's supervisor told him that there was a light duty assignment available, the light duty coordinator informed Carter that there were no vacant positions. After he exhausted paid sick leave in July 2017, Carter, still unable to work, requested paid disability leave from the County. His request was denied on August 10, 2017. Instead, the County placed Carter on unpaid leave from August 10, 2017 through December 11, 2017. Carter was then terminated on December 11, 2017 because he could not perform his job as a bus operator. Carter continues to receive medical treatment for his injuries, which continue to cause him physical and emotional pain and will require substantial additional medical care in the future.

On March 9, 2018, Carter filed a pre-charge inquiry form and affidavit ("EEOC Affidavit") with the United States Equal Employment Opportunity Commission ("EEOC"). On March 14, 2018, he submitted his formal EEOC Charge of Discrimination ("EEOC Charge"), on which, in identifying the basis of his complaint, he checked only the box for disability discrimination. In the narrative section of the EEOC Charge, he stated that he had suffered an on-the-job injury and was discharged because of his inability to do his job. He did not include any details about his requests for light duty or disability leave, or a possible claim of retaliation. After filing suit in this Court on July 24, 2018, Carter filed an Amended Complaint, on November 5, 2018, in which he asserts claims of employment discrimination based on disability (Count 1) and retaliation (Count 2).

## DISCUSSION

The County has filed a Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). County asserts that the Court lacks subject matter jurisdiction because Carter did not exhaust administrative remedies based on his failure to assert a retaliation claim in his EEOC Charge. In the alternative, the County argues that the Court should dismiss Carter's claims because he failed to allege that he is a qualified individual under the ADA or that he requested and was denied a reasonable accommodation, and because he has not stated the elements of either a wrongful termination or retaliation claim. After the Motion was fully briefed, the Court requested and received supplemental briefs from both parties addressing the impact of *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), on the Motion.

### I. Subject Matter Jurisdiction

The County originally sought dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based Carter's alleged failure to exhaust administrative remedies. Since the filing of the Motion, the United States Supreme Court has held that the exhaustion requirement under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, is "a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Davis*, 139 S. Ct. at 1851. The Court will therefore construe the County's claim that Carter failed to exhaust administrative remedies as seeking dismissal under Rule 12(b)(6) for failure to state a claim. *See Stewart v. Iancu*, 912 F.3d 693, 701–02 (4th Cir. 2019) (holding that dismissal for failure to comply with Title VII's 180-day waiting-period requirement, which is a mandatory claim-processing rule, was appropriate under Rule 12(b)(6)); *see also Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) ("[T]he ADA

incorporates [Title VII's] enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies . . . ." (citation omitted)); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases.").

## II. Failure to State a Claim

### A. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Unlike on a motion to dismiss under Rule 12(b)(1), a court ordinarily may not consider evidence outside the pleadings on a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The County has attached to its Motion Carter's EEOC Charge, while Carter has attached to his memorandum in opposition to the Motion ("Opposition") both the pre-

charge inquiry form and EEOC Affidavit, as well as an affidavit by Carter attesting to how and when he filed his EEOC Charge. Carter's EEOC Charge is integral to his claims because he relies on and refers to it in his Amended Complaint and does not contest its authenticity. However, since neither Carter's pre-charge inquiry form and EEOC Affidavit nor the affidavit attached to the Opposition is mentioned in the Amended Complaint, neither is integral to it. Therefore, for the purposes of evaluating the County's Motion to Dismiss, the Court will consider Carter's EEOC Charge only. *See Zak*, 780 F.3d at 606–07.

## B. Exhaustion of Administrative Remedies

In Count II, Carter asserts a claim of retaliation under the ADA, based on his allegation that he was fired after requesting a reasonable accommodation for his disability. The County argues that Carter's claim should be dismissed for failure to exhaust administrative remedies because he did not check the retaliation box or describe any retaliation in the narrative section of his EEOC Charge. Carter contends that he successfully exhausted the EEOC process because he raised the retaliation claim in the pre-charge inquiry form and EEOC Affidavit, which he submitted to the EEOC.

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A plaintiff can state a claim of retaliation under the ADA upon a *prima facie* showing that: (1) the plaintiff engaged in a protected activity; (2) the plaintiff's employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). An employee's request for reasonable accommodations is a protected

5

activity. *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001) ("The record shows ... protected activity—[plaintiff's] request for an accommodation."); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190–91 (3d Cir. 2003); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (assuming without deciding that a request for a reasonable accommodation is a protected activity because without such protection, an employer could grant the request then terminate an employee in retaliation without consequence). Termination of employment is a materially adverse action for purposes of a retaliation claim under the ADA. *See, e.g., Haulbrook*, 252 F.3d at 706. The termination of an employee three weeks after a request for a reasonable accommodation has been found sufficient on its own to raise a question of a causal nexus. *See id.*

Congress modeled the ADA on Title VII and incorporated its enforcement remedies and procedures into the ADA. 42 U.S.C. § 12117(a); *Sydnor*, 681 F.3d at 593. By adopting Title VII's enforcement procedures, the ADA requires that a plaintiff first exhaust administrative remedies by filing and pursuing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(b), (f); *Sydnor*, 681 F.3d at 593.

Prior to filing suit under the ADA, a plaintiff is required to file an administrative charge of discrimination with the EEOC. 42 U.S.C. §§ 2000e-5(f)(1), 12117(a). The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The EEOC charge must contain allegations "sufficiently precise to identify the parties, and to describe generally the actions or practices complained of." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b) (2004)). "The plaintiff's claim generally will be barred if [the] charge alleges discrimination on one basis—such as race—and [the plaintiff] introduces another basis in formal litigation—such as sex." *Id.*

However, if the claims in the judicial complaint "are reasonably related to [the EEOC] charge and can be expected to follow from a reasonable administrative investigation," the exhaustion requirement is satisfied. *Sydnor*, 681 F.3d at 594. When the claims in the civil action instead "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko*, 429 F.3d at 509. The exhaustion requirement serves two functions. "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Civil Rights Act's primary goal, the securing of voluntary compliance with the law." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citation omitted).

Where a retaliation claim arose before the filing of an EEOC charge of discrimination, administrative remedies relating to that claim must be exhausted. Since Carter's alleged retaliation did not arise from a prior EEOC Charge, Carter must have exhausted administrative remedies before filing suit in federal court. The County correctly asserts that Carter checked only the box raising discrimination based on disability in his EEOC Charge and did not check the box for retaliation. However, this fact alone does not determine whether Carter has exhausted his administrative remedies. *See Mercer v. PHH Corp.*, 641 F. App'x 233, 238–39 (4th Cir. 2016). Rather, the Court investigates the Charge "as a whole" with the blank box as "only one factor." *Id.* at 239. Accordingly, the Court turns its attention to the remainder of the Charge.

In the narrative portion of the EEOC Charge, Carter reported that he suffered a work-related injury and had a worker's compensation dispute with the County which related his treatment. Carter's narrative also stated that he was discharged in December 2017 and that he was told he was discharged because of his "inability to perform [his] job," but he believes he was "discriminated against because of [his] disability." EEOC Charge, Mot. Dismiss Ex. 1, ECF No.

7

19-2. Carter failed to include any facts describing a protected activity, namely a request for reasonable accommodations such as light duty assignments and paid disability leave. The facts in the Charge thus did not sufficiently put the County on notice of the retaliation claim by describing the "practices complained of." *Chacko*, 429 F.3d at 508; *see Sydnor*, 681 F.3d at 595 (requiring "notice of the allegations against" the defendant). Thus, Carter alleged one form of harm in the Charge—disability discrimination—but asserts a different harm in the Complaint—retaliation—without notice. *See Chacko*, 429 F.3d at 509. Although the Court's analysis is confined to Carter's EEOC Charge and does not include Carter's pre-charge inquiry form and the EEOC Affidavit, even if the Court could consider those documents, they would not change the Court's analysis. Carter has not alleged that the County received the pre-charge inquiry and EEOC Affidavit or that those documents gave the County "fair notification" of the facts within them. *See Miles v. Dell*, 429 F.3d 480, 492 (4th Cir. 2005) (holding that a letter sent to the EEOC that "was not served on" the defendant was "insufficient to meet the administrative exhaustion requirement"). Therefore, Carter's retaliation claim in Count II of the Amended Complaint will be dismissed for failure to exhaust administrative remedies.

### C. Qualified Individual

In Count I, Carter asserts a claim for unlawful employment discrimination based on disability, alleging that the County failed to accommodate his disability and wrongfully terminated him (Count I). He alleges that the County refused to provide him with light duty assignments and paid disability leave as an accommodation for his disability, then fired him because of his disability. The County argues that Carter's claim must be dismissed because he has failed to allege that he is a qualified individual under the ADA.

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To state a disability discrimination claim under the ADA, the plaintiff must allege that (1) the plaintiff has a "disability"; (2) the plaintiff is "qualified" for the job in question; and (3) the employer's termination of the plaintiff constituted unlawful "discrimination" based on disability. *See Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 212 (4th Cir. 1994). A qualified individual with a disability is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). If the plaintiff's complaint fails to put forward allegations that the plaintiff meets the qualified individual standard, the complaint may be dismissed for failure to state a claim. *See Cramer v. Florida*, 117 F.3d 1258, 1264 (11th Cir. 2010) (affirming the dismissal of a complaint alleging discrimination under the ADA where the plaintiffs failed to allege that "they are unable to perform the essential functions of their jobs"); *see also Smith v. Town of Ramapo*, 745 F. App'x 424, 425–26 (2d Cir. 2018).

The qualified individual inquiry proceeds in two steps. The Court must consider (1) whether the complaint has alleged that the plaintiff "could perform the essential functions of the job," consisting of "functions that bear more than a marginal relationship to the job at issue"; and (2) "if not, whether any reasonable accommodation by the employer would enable [the plaintiff] to perform those functions." *Tyndall*, 31 F.3d at 213 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)). Where the requested accommodation is an alternative work assignment or temporary leave, a plaintiff must allege that if such leave were granted, "at the point at which he would have returned from leave, he could have performed the essential functions of his job." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013). "A leave request will

not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Id.* at 345 n.7. A reasonable accommodation does not require an employer to "wait indefinitely for [the plaintiff's] medical conditions to be corrected, especially in light of the uncertainty of cure." *Myers*, 50 F.3d at 283. Rather, a "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Id.*; *see Tyndall*, 31 F.3d at 215 (noting the "strong inference" that the plaintiff's firing was not due to bias or the employer's unwillingness to make reasonable accommodations since the employer fired her only after being informed that she must take indefinite leave).

Here, Carter has alleged that he cannot perform the essential functions of his job. In the Amended Complaint, Carter states that "[t]o qualify for and perform the job of bus operator, an employee must, *inter alia*, be physically able to walk, stand, and lift weight." Am. Compl. ¶ 15, ECF No. 13. Those duties also require him to "use both his hands to operate" buses, drive buses, pick up and drop off passengers as bus stops, "assist disabled passengers" as they "board and discharge" the bus, and lift and carry "packages for disabled passengers and others in need." *Id.* ¶ 16. Carter has alleged that after he was diagnosed with trigger finger and carpal tunnel syndrome in both hands, he could not operate the bus or otherwise perform the functions of a bus driver. Carter has acknowledged that he was unable, and continues to be unable, to perform all of these duties.

Notably, Carter has not alleged that he requested a reasonable accommodation, whether leave or light-duty work, which would enable him to perform those essential duties. After Carter

exhausted sick leave, approximately 11 months after his second diagnosis of carpal tunnel syndrome, he was still disabled and unable resume work as a bus driver. He then requested additional paid disability leave from the County. The requested leave was not for a specific period of time. Carter did not allege that at the end of any leave, he would be able to operate a bus, help disabled customers board and depart from the bus, or help customers carry packages. *See Wilson*, 717 F.3d at 346. While Carter also requested a light-duty assignment, he similarly did not state for how long he would require the alternate assignment or that after having a light-duty assignment he would be able to perform as a bus operator. Rather, Carter alleges that he requested the accommodations so that he "could eventually return to his job" or "receive alternate employment with the [County] in a different job." Am. Compl. ¶ 22; *see Myers*, 50 F.3d at 282. Indeed, Carter states that he "continues to receive and will require in the future, substantial medical treatment" and "continues to suffer significant pain both physical and emotional as a result of said injuries." Am. Compl. ¶ 17.

Accordingly, Carter has not alleged that he requested reasonable accommodations from the County, because the requests for a light-duty assignment and paid leave were not for a limited, finite period. *See Wilson*, 717 F.3d at 345 n.7. In *Myers*, where a county transit system needed to "promptly fill transit positions with qualified drivers lest public vehicles go unmanned," the court held that the ADA did not require the county to give a bus driver with a medical condition of uncertain duration additional paid leave as a reasonable accommodation. *Myers*, 50 F.3d at 282–83. The ADA does not require the County "to wait indefinitely" for an employee's "medical conditions to be corrected, especially in light of the uncertainty of the outcome." *Id.* at 283. Where Carter has failed to allege, and apparently cannot plausibly allege, that the accommodations would enable him to perform as a bus operator "presently, or in the immediate future," *id.*; *Halpern v.*

*Wake Forest Univ.*, 669 F.3d 454, 465–66 (4th Cir. 2012), he has not plausibly stated that he is a qualified individual under the ADA and thus has not stated a viable ADA claim. The Court will therefore grant the Motion as to the disability discrimination claim, under both theories of failure to accommodate and wrongful termination. *See Tyndall*, 31 F.3d at 212. While Carter appears to have an ongoing disability and may be entitled to disability benefits of some kind, he does not have an ADA claim for discrimination or retaliation.

## CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: August 12, 2019

THEODORE D. CHUANG
United States District Judge